**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| GERMAN MEJIA, ) | No. CV 09-02313-CW |
| ) | |
| Plaintiff, ) | DECISION AND ORDER |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner, Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge. Plaintiff seeks review of the Commissioner's denial of disability benefits. As discussed below, the court finds that the Commissioner's decision should be reversed and this matter remanded for further proceedings.

**I. BACKGROUND**

Plaintiff German Mejia was born on January 27, 1958, and was 50 years old at the time of his administrative hearing. [Administrative Record ("AR") 29.] He had eleven years of education in Honduras, and speaks minimal English. [AR 29-30.] He identified past relevant work

1

experience as a house painter and maintenance worker. [AR 33, 106.] Plaintiff alleges disability due to an inability to walk or stand for a long period of time. [AR 105.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on April 6, 2009. On September 16, 2009, Defendant filed an answer and Plaintiff's Administrative Record ("AR"). On November 12, 2009, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff protectively applied for a period of disability and disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on December 16, 2006, alleging disability since March 1, 2005. [AR 13, 86-94.] After the applications were denied, Plaintiff requested and received an administrative hearing, which was held on May 14, 2008, before an Administrative Law Judge ("ALJ"). [AR 23.] Plaintiff appeared with counsel, and testimony was taken from Plaintiff, with the assistance of a Spanish interpreter, and from a vocational expert. [Id.] The ALJ denied benefits in a decision issued on September 25, 2008. [AR 13-20.] When the Appeals Council denied review on February 4, 2009, the ALJ's decision became the Commissioner's final decision. [AR 1.]

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of

legal error and supported by substantial evidence. However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

**V.  DISCUSSION**

**A.  THE FIVE-STEP EVALUATION**

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288. If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to

education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

### B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date (step one); that Plaintiff had "severe" impairments of mild lumber degenerative disease, bilateral shoulder impairment syndrome, gastritis, and history of alcohol abuse (step two); and that Plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 10-17.]

The ALJ accepted the opinions of all physicians of record, and determined that Plaintiff had an RFC for light work, except that he was only able to occasionally crouch, stoop, and reach overhead bilaterally. [AR 17.] Based upon the testimony of the vocational expert ("VE") [AR 43-47], the ALJ found Plaintiff was able to return to past relevant work as a landscape specialist and as a janitor (step four). [AR 19.] Consequently, Plaintiff was found not "disabled" as defined by the Social Security Act at step four. [AR 19.] The ALJ did not reach step five of the sequential evaluation. [Id.]

### C. ISSUE IN DISPUTE: PAST RELEVANT WORK

The parties' Joint Stipulation sets out the following disputed issue: whether the ALJ erred at step four of the sequential evaluation in finding that Plaintiff could return to past relevant work as a

---

work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

landscape specialist and janitor. [JS 4.]

At step four, plaintiff has the burden of showing that he could no longer perform his past relevant work. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). Nonetheless, the ALJ has the duty "to make the requisite factual findings to support his conclusion." Id. This duty requires the ALJ to examine plaintiff's "'residual functional capacity and the physical and mental demands' of [plaintiff's] past relevant work." Id. at 844-45 (quoting 20 C.F.R. §§ 404.1520(e), 416.920(e)). Plaintiff must be able to perform his past relevant work *either* as actually performed *or* as generally performed in the national economy. Id. at 845 ("We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed") (emphasis in original).

Relevant to the issue before this court, the record reflects that Plaintiff performed a maintenance job at a recreation facility from 1994-2004. [AR 31, 136.] The VE classified this as two separate positions, that of landscape specialist (Dictionary of Occupational Titles, "DICOT," 406.687-010), and janitor (DICOT 381.687-014).[2] She then testified that someone with Plaintiff's RFC for a limited range of light work could still perform the job of landscape specialist as that job is generally performed and the job of janitor as the job was actually performed. [AR 46.]

---

[2] The VE testified that, in addition to these, the evidence established that Plaintiff also performed the past relevant jobs of construction laborer (DICOT 869.687-026); material handler (DICOT 929.687-030); and hand painter (DICOT 740.684-022). She testified, however, [AR 44-46], that the laborer, handler, and painter jobs all require an exertion level that exceeds Plaintiff's RFC and, accordingly, that testimony is not at issue here.

6

The Court observes that several ambiguities exist with respect to the step four evaluation.

For one, as Plaintiff correctly points out, according to the DICOT, the job of landscape specialist is classified as a medium exertion job and therefore would exceed Plaintiff's RFC. See DICOT 406.687-010, 1991 WL 673342 (G.P.O.). The ALJ may, of course, rely on the testimony of a VE in evaluating whether a plaintiff is capable of performing past relevant work. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). However, "the best source for how a job is generally performed is usually the [DICOT]." Pinto, 249 F.3d at 845. When there is an apparent conflict between the testimony of the VE and the definitions contained in the DICOT, therefore, the ALJ must ask the VE to explain the deviation. Massachi v. Astrue, 486 F.4d 1149, 1153 (9th Cir. 2007) (citing Social Security Ruling 00-4p). Here, notwithstanding this apparent conflict, the ALJ did not do so.

Furthermore, relevant to this dispute, the evidence established that Plaintiff performed *one* job, as a maintenance worker at a recreational camp for families. [AR 31, 136.] This job required Plaintiff to lift beds and chairs, cut trees, make ditches for plumbing, and bring things to the tourists as needed. [Id.] According to the DICOT, a landscape specialist does the following:

> Maintains grounds and areas along highway right-of-way of city, state, and national parks: Sows grass seed, using spreader, or plants trees, shrubs, or flowers, according to instructions and planned design of landscaped area, using handtools. Applies herbicide or mulch to designated areas, using sprayers. Grubs and weeds around bushes, trees, and flower beds. Trims hedges and prunes trees, using handtools. Mows lawns, using hand mower or power-driven lawnmower. Picks up and burns or carts away paper and rubbish. Repairs and paints benches, tables, and guardrails, and assists in repair of roads, walks, buildings, and mechanical equipment, using handtools. May live on-site and be designated Campground Caretaker (government ser.). May be referred to as Groundskeeper, Parks and Grounds (government ser.).

DICOT 406.687-010, 1991 WL 673342 (G.P.O.).

A janitor, on the other hand:

> Keeps premises of office building, apartment house, or other commercial or institutional building in clean and orderly condition: Cleans and polishes lighting fixtures, marble surfaces, and trim, and performs duties described in CLEANER (any industry) I Master Title. May cut and trim grass, and shovel snow, using power equipment or handtools. May deliver messages. May transport small equipment or tools between departments. May setup tables and chairs in auditorium or hall. May be designated according to duties performed as Hall Cleaner (hotel & rest.); Light-Fixture Cleaner (any industry); Marble Cleaner (any industry); Metal Polisher (any industry); Paint Cleaner (any industry); or according to equipment used as Scrubbing-Machine Operator (any industry).

DICOT 381.687-014, 1991 WL 673257 (G.P.O.)

It is certainly true, as the Commissioner suggests, that vocational experts often discuss more specific job categories than the general classifications found in the DICOT and that, as a result, the jobs specified by the vocational expert may conflict with the descriptions in the DICOOT. Despite the conflict with the DICOT, jobs identified by a vocational expert may be appropriate. E.g., Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (holding jobs chosen by vocational expert for plaintiff deemed capable of "sedentary" work were appropriate, even though some were defined in the DOT as "light"). This does not, however, obviate the requirement that the ALJ ascertain whether a reasonable explanation exists for any apparent deviation. Massachi, 486 F.4d at 1153.

Accordingly, because the record is ambiguous with respect to the nature of Plaintiff's past relevant work and whether an individual with Plaintiff's RFC can perform that work, the Court finds that remand is necessary to permit the Commissioner to clarify the record and, if necessary, to proceed to step five of the sequential

1 evaluation.

2     **E.    REMAND FOR FURTHER PROCEEDINGS**

3     The decision whether to remand for further proceedings is within
4 the discretion of the district court.  <u>Harman v. Apfel</u>, 211 F.3d 1172,
5 1175-1178 (9th Cir. 2000).  Where no useful purpose would be served by
6 further proceedings, or where the record has been fully developed, it
7 is appropriate to exercise this discretion to direct an immediate
8 award of benefits.  <u>Harman</u>, 211 F.3d at 1179 (decision whether to
9 remand for further proceedings turns upon their likely utility).
10 However, where there are outstanding issues that must be resolved
11 before a determination can be made, and it is not clear from the
12 record that the ALJ would be required to find the claimant disabled if
13 all the evidence were properly evaluated, remand is appropriate.  <u>Id</u>.
14 Here, as set out above, outstanding issues remain before a finding of
15 disability can be made.  Accordingly, remand is appropriate.

16                         **VI.    ORDERS**

17     Accordingly, **IT IS ORDERED** that:

18     1.    The decision of the Commissioner is **REVERSED**.

19     2.    This action is **REMANDED** to defendant, pursuant to Sentence
20 Four of 42 U.S.C. § 405(g), for further proceedings as discussed
21 above.

22     3.    The Clerk of the Court shall serve this Decision and Order
23 and the Judgment herein on all parties or counsel.

24

25 DATED: May 17, 2010

26 

27                         CARLA M. WOEHRLE
28                   United States Magistrate Judge